## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| LITTLE CAESAR ENTERPRISES, INC., ) <br>  a Michigan corporation,  and ) <br> LC TRADEMARKS, INC., ) <br>  a Michigan corporation, ) <br> ) <br>          Plaintiffs, ) <br> ) <br>    v. ) <br> ) <br> MIRAMAR QUICK SERVICE ) <br> RESTAURANT COROPORATION, ) <br>  a Massachusetts corporation, ) <br> SILON CORPORATION, ) <br>  a Massachusetts corporation, ) <br> KHALID DRIHMI, ) <br>  a Massachusetts citizen, and ) <br> ABDEL DRIHMI, ) <br>  a Massachusetts citizen, ) <br> ) <br>         Defendants. ) | Case No. _____ |

## **COMPLAINT**

Plaintiffs Little Caesar Enterprises, Inc. and LC Trademarks, Inc. (collectively, "Little Caesar") bring this action for breach of contract, trademark infringement, unfair competition, and trade dress infringement. Little Caesar has terminated its Franchise Agreements with Defendants based on Defendants' multiple breaches of those agreements. Yet Defendants continue to hold themselves out as LITTLE CAESARS franchisees.

Defendants' continued, unauthorized use and enjoyment of Little Caesar's confidential business system and the LITTLE CAESARS trademarks, trade name, and trade dress breaches the Franchise Agreements and violates the Lanham Act, 15 U.S.C. §§ 1114, *et seq*. Little Caesar seeks injunctive, monetary, and other relief against Defendants for the reasons set forth below.

## THE PARTIES

1.     Plaintiff Little Caesar Enterprises, Inc. is a Michigan corporation with its principal place of business in Detroit, Michigan. It is engaged in the business of franchising independent businesspersons to operate LITTLE CAESARS restaurants throughout the United States. Little Caesar's franchisees are licensed to use the LITTLE CAESARS trade name, trademarks, and service marks and to operate under the LITTLE CAESARS System, which involves the production, merchandising, and sale of pizza, chicken wings, and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2.     Plaintiff LC Trademarks, Inc. is a Michigan corporation with its principal place of business in Detroit, Michigan. LC Trademarks, Inc. is the owner of the trademark, service mark, and trade name "LITTLE CAESARS," and related

marks. It licenses these marks to Plaintiff Little Caesar Enterprises, Inc., which in turn licenses them to LITTLE CAESARS franchisees.

3.      Defendant Miramar Quick Service Restaurant Corporation is a Massachusetts corporation with a principal place of business, upon information and belief, in the Commonwealth of Massachusetts. It owned and operated LITTLE CAESARS franchises located at 1380 Berlin Turnpike, in Wethersfield, Connecticut ("Restaurant 3102-001"), and 1762 Boston Road, in Springfield, Massachusetts ("Restaurant 3102-002"), pursuant to Franchise Agreements with an effective date of November 19, 2013.

4.      Defendant Silon Corporation is a Massachusetts corporation with a principal place of business, upon information and belief, in the Commonwealth of Massachusetts. It owned and operated LITTLE CAESARS franchises located at 394 Middle Turnpike West, in Manchester, Connecticut ("Restaurant 3276-001"), and 306 Farmington Avenue, in Hartford, Connecticut ("Restaurant 3276-002"), pursuant to Franchise Agreements with an effective date of December 29, 2015.

5.      Defendant Khalid Drihmi is a natural person and, upon information and belief, a citizen and resident of the Commonwealth of Massachusetts. Defendant Khalid Drihmi is an officer and shareholder of Defendants Miramar Quick Service Restaurant Corporation and Silon Corporation, and personally

guaranteed the obligations of those entities under their Franchise Agreements with Little Caesar pursuant to executed personal guarantees.

6.      Defendant Abdel Drihmi is a natural person and, upon information and belief, a citizen and resident of the Commonwealth of Massachusetts. Defendant Abdel Drihmi is an officer and shareholder of Defendant Silon Corporation, and personally guaranteed the obligations of that entity under its Franchise Agreement with Little Caesar pursuant to an executed personal guarantee. Defendants Miramar Quick Service Restaurant Corporation, Silon Corporation, Khalid Drihmi, and Abdel Drihmi are collectively referred to as the "Drihmis."

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116  & 1121; and 28 U.S.C. §§ 1331, 1332, 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of interest and costs, and no defendant shares a state of citizenship with any plaintiff.

8.      This Court has *in personam* jurisdiction over Defendants because they conduct business in this district and the events giving rise to Little Caesar's claims occurred in this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and the venue provision contained in the parties' Franchise Agreements.

4

## BACKGROUND FACTS

### Little Caesar

10.     Plaintiff Little Caesar Enterprises, Inc. is the franchisor of the LITTLE CAESARS System.

11.     Plaintiff LC Trademarks, Inc. owns numerous federal registrations for the mark "LITTLE CAESARS" and related marks. Among those registrations are Registration Nos. 2036763, 2028607, 2259637, 3904450, 3925216, and others. Each of these registrations is in full force and effect.

12.     Plaintiff Little Caesar Enterprises, Inc. has the exclusive license to use and to license others to use the LITTLE CAESARS marks and trade name and has used them at all times relevant to this action to identify its restaurants and the pizza and other products associated with those restaurants.

13.     The trade dress of LITTLE CAESARS restaurants includes the signage, lettering style, color scheme, exterior appearance, floor plans, and décor (including, without limitation, menu boards, display racks, and servers' uniforms) that are featured at the restaurants operated by LITTLE CAESARS franchisees.

14.     The LITTLE CAESARS trade dress consists of arbitrary embellishments primarily adopted for the purpose of identification and individuality, and is nonfunctional.

15.    The LITTLE CAESARS trademarks and trade dress are utilized in interstate commerce.

### The Parties' Rights And Obligations Under The Franchise Agreements

16.    The Drihmis were formerly licensed to use the LITTLE CAESARS trademarks, trade name, trade dress, and business system in accordance with the terms of their Franchise Agreements with Little Caesar.

17.    Among the Drihmis' primary obligations under the Franchise Agreements, was the obligation to operate their franchised restaurants in accordance with the operational standards, procedures, and specifications prescribed by Little Caesar. Relevant Franchise Agreement provisions in that regard include, but are not limited to, the following:[1]

   a.    **5.1   Importance of Compliance with System Standards.** Franchisee understands and acknowledges that every detail of the System and the Restaurant is essential to Franchisee, Little Caesar, and other System franchisees in order to (i) develop and maintain quality and Little Caesar's operating standards, (ii) increase the demand for the products and services sold by all franchisees operating under the System, and (iii) protect Little Caesar's reputation and goodwill. Franchisee shall maintain Little Caesar's high standards with respect to facilities, services, products, and operations. . . .

   b.    **5.3   Conformance to System Standards.** To insure that the highest degree of quality and service is maintained, Franchisee shall operate the

---

[1]    Because the Drihmis' Franchise Agreements were executed in different years, the wording of the provisions and/or the section numbers for the provisions cited in this Complaint may vary from one Franchise Agreement to the other. For ease of reference, the citations contained in this Complaint can be found in the Drihmis' most recent Franchise Agreement (the Franchise Agreement for Restaurant 3276-002). Unless otherwise noted herein, the Drihmis' Franchise Agreements contain materially identical provisions.

Restaurant in strict conformity with such methods, standards, procedures, and specifications as Little Caesar may from time to time prescribe in the Manuals or otherwise in writing. Franchisee shall refrain from (a) deviating from such methods, standards, procedures, and specifications without Little Caesar's prior written consent, and (b) otherwise operating in a manner which reflects adversely on the Proprietary Marks or the System. . . .

      c.    5.3.1 Franchisee shall maintain in sufficient supply, and use at all times, only such products, equipment, materials, signs, menu items, ingredients, supplies, and paper goods, as conform to Little Caesar standards and specifications, and shall refrain from using non-conforming items[.]

      d.    5.3.2 Franchisee shall sell or offer for sale only such products and services as (a) meet Little Caesar's standards of quality, (b) have been expressly approved for sale in writing by Little Caesar, and (c) have been prepared in accordance with Little Caesar's methods and techniques for product preparation. . . . Franchisee shall not deviate from Little Caesar's methods, standards, procedures, and specifications regarding, without limitation, ingredients, recipes, methods of preparation and service, and weight and quality of products served.

      e.    **5.5    Maintenance of Restaurant Premises.** Franchisee shall maintain the Restaurant premises and adjacent public areas in a clean, orderly, and excellent condition and in excellent appearance to the public. . . .

18.    Under their Franchise Agreements, the Drihmis also agreed to "meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant." (Franchise Agreement § 5.14, or similar provision.)

19.    They further agreed to "comply with all federal, state, and local laws, rules, and regulations. . . ." (*Id.*, or similar provision.)

20.    The Drihmis agreed that they would purchase the products, ingredients, equipment, and supplies used or sold by their LITTLE CAESARS franchises only from Little Caesar affiliate Blue Line Foodservice Distribution,

Inc. ("Blue Line") and that they would make timely payments to Blue Line for those purchases. (*Id.* §§ 3.4, 5.4, 5.4.1, or similar provisions.)

21.   In addition, in signing their Franchise Agreements, the Drihmis agreed to comply with Little Caesar's recordkeeping and reporting requirements. Those requirements included, among others, obligations to:

a.   Prepare and preserve for at least four years, complete and accurate books, records, and accounts in accordance with generally accepted accounting principles and in the form and manner prescribed by Little Caesar (*Id.* § 11.1, or similar provision);

b.   Provide Little Caesar with copies of quarterly financial statements related to the Drihmis' franchised restaurants (*Id.* § 11.3, or similar provision); and

c.   Provide Little Caesar with such other data, information, and records related to the Drihmis' operation of their franchised restaurants as Little Caesar may request, in the manner and within the time frames established by Little Caesar (*Id.* §§ 11.3, 11.4, or similar provisions).

22.   And, the Drihmis agreed that Little Caesar had the right to audit the books and records of the Drihmis' franchises at any time. (*Id.* § 11.5, or similar provision.)

23.   The Drihmis agreed that the failure to comply with the terms of the

Franchise Agreements would constitute a default under the Agreements and that Little Caesar had the right to terminate the Agreements if the Drihmis failed to cure a default within the time required under the Agreements. (*Id.* § 13.3, or similar provision.)

24.     The Franchise Agreements provided for thirty days to cure many defaults under the Agreements (*id.*, or similar provision) but allowed shorter cure periods for more serious defaults. For instance, the Drihmis agreed that Little Caesar would have the right to terminate their Franchise Agreements if they failed to cure any default under the Agreements which materially impairs the goodwill associated with Little Caesar's proprietary marks or presents a health or safety hazard to restaurant employees or customers, after receiving at least twenty-four hours to cure such a default. (*Id.* § 13.2.20, or similar provision.)

25.     The Drihmis also agreed that Little Caesar had the right to immediately terminate the Franchise Agreements without providing an opportunity to cure under several circumstances, including if the Drihmis:

a.     Received three or more notices from Little Caesar, within any twelve-month period, that they were in default, whether or not cured after notice (*id.* § 13.2.10, or similar provision); or

b.     Willfully or repeatedly failed to meet any requirements or specifications established by Little Caesar with respect to product quality, physical

property, condition of equipment or materials used, products manufactured, menu, or the use of products, packaging or promotional materials that have not been specified or approved by Little Caesar (*id.* § 13.2.14, or similar provision).

26.    In addition, the Drihmis agreed that Little Caesar had the right to terminate any other Franchise Agreement between the Drihmis or any of their affiliates and Little Caesar in the event that a Franchise Agreement between the Drihmis or their affiliate and Little Caesar was terminated for a default under that agreement. (Franchise Agreement §§ 13.2.21, 13.4, or similar provisions.)

27.    Furthermore, under the terms of the Franchise Agreements, the Drihmis agreed that their right to use Little Caesar's proprietary marks was limited to uses authorized by the Franchise Agreements, and that "any unauthorized use thereof shall constitute an infringement." (*Id.* § 7.2.5, or similar provision.)

28.    They agreed that they would use Little Caesar's proprietary marks, including but not limited to its trademarks, trade names, service marks, logos, emblems, trade dress, and other indicia of origin, "only in the manner authorized and permitted by Little Caesar." (*Id*. § 7.2.1, or similar provision.)

29.    The Drihmis were permitted to use Little Caesar's proprietary marks only in accordance with the LITTLE CAESARS System and the related standards and specifications, which "underlie the goodwill associated with and symbolized by the [p]roprietary [m]arks." (*Id.* § 7.1.3, or similar provision.)

30.     The Drihmis agreed that, during the term of the Franchise Agreements and after termination, they would not take any action "which may tend to derogate or jeopardize Little Caesar's interest" in its proprietary marks. (*Id.* § 7.3.2, or similar provision.) They also covenanted not to "do or perform any other act injurious or prejudicial to the goodwill associated with the [p]roprietary [m]arks" and the Little Caesars System. (*Id.* § 15.2.1, or similar provision.)

### Defendants' Post-Termination Obligations

31.     The Drihmis agreed that in the event that their Franchise Agreements were terminated, they would "immediately cease to operate" the restaurants and would not thereafter, directly or indirectly, "represent to the public or hold [themselves] out as a present or former franchisee of Little Caesar." (Franchise Agreement § 14.1, or similar provision.)

32.     In addition, the Drihmis agreed that they would immediately and permanently cease to use, in any manner whatsoever, any products, ingredients, trade secrets, confidential methods, procedures, and techniques associated with the LITTLE CAESARS System and/or proprietary marks. (*Id*. § 14.2, or similar provision.)

33.     They also agreed to return to Little Caesar all of Little Caesar's confidential manuals and other confidential information. (*Id*. § 14.9, or similar provision.)

34.    The Drihmis agreed that upon termination of the Franchise Agreements they would not use "any designation of origin or description or representation which falsely suggests or represents an association or connection with Little Caesar." (*Id* § 14.5, or similar provision.)

35.    And they agreed to take any actions necessary to cancel any assumed name or equivalent registration that contains the LITTLE CAESARS Proprietary Marks, as the term is defined in the Franchise Agreements, and to furnish evidence of compliance within thirty days after the termination of the Agreements.  (*Id.* § 14.3, or similar provision.)

36.    Under the Franchise Agreements, the Drihmis agreed that upon termination, Little Caesar would have the option to purchase any or all of the furnishings, equipment, signs, fixtures, or supplies related to the operation of the restaurants. In addition, they agreed to assign to Little Caesar, at Little Caesar's request, any interests they had in any lease for the restaurant premises. (*Id.* §§ 14.4, 14.10, or similar provisions.)

37.    The Drihmis also agreed to a reasonable post-termination covenant against competition, which states that they may not, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any person, persons, or legal entity "own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which

is a quick or fast service restaurant engaged in the sale of pizza, pasta, sandwiches, chicken wings, and/or related products," for a continuous uninterrupted period of one year following the termination of the Franchise Agreements (or a final court order regarding the same), in any Designated Market Area of any LITTLE CAESARS restaurant, and for a continuous uninterrupted period of two years following the termination of the Franchise Agreements (or a final court order regarding the same), in the Designated Market Area in which the Drihmis' former LITTLE CAESARS restaurants are located.  (*Id.* § 15.3, or similar provision.) The Drihmis further agreed that breaching this and any other covenants in the Franchise Agreements would cause Little Caesar irreparable injury for "which no adequate remedy at law may be available, and agree[d] to pay all court costs and attorneys' fees incurred by Little Caesar in obtaining injunctive or other equitable legal relief . . . ." (*Id.* § 15.4, or similar provision.)

38.    The Drihmis agreed that they would pay to Little Caesar and its affiliates all sums owed, and Little Caesar's costs, expenses, and reasonable attorneys' fees incurred by reason of any default or termination of the Franchise Agreements, or the enforcement of the Drihmis' obligations upon termination. They also agreed to pay Little Caesar liquidated damages. (*Id.* §§ 14.6, 14.7, 14.8, 23.9, or related provisions.)

39.     Pursuant to the personal guarantees attached as Exhibit A to the Franchise Agreements, Defendants Khalid and Abdel Drihmi agreed to be personally bound by the covenants and obligations of the Franchise Agreements, including the obligation to pay Little Caesar and its affiliates and the obligation to comply with the post-termination covenant against competition.

<u>**Defendants' Defaults Under Their Franchise Agreements**</u>
<u>**For Restaurants 3102-001 and 3102-002**</u>
<u>**And The Termination Of Those Franchise Agreements**</u>

40.     On May 24, 2017, Little Caesar sent the Drihmis a Notice of Default and Notice to Cure informing them that they had committed defaults of their Franchise Agreements for Restaurants 3102-001 and 3102-002 by failing to comply with federal tax laws -- as evidenced by a 2016 Notice of Levy from the Internal Revenue Service related to the restaurants -- and by failing to timely provide to Little Caesar financial records and other information related to their franchises, which Little Caesar had requested in connection with an audit of the franchises.

41.     Then on August 10, 2017, Little Caesar sent the Drihmis another Notice of Default and Notice to Cure informing them that they had committed additional defaults of their Franchise Agreements for Restaurants 3102-001 and 3102-002 by failing to make timely payments to their supplier, Blue Line, for food and supply deliveries.

14

42.     On November 14, 2017, Little Caesar sent the Drihmis a third Notice of Default relating to Restaurant 3102-001 based on the restaurant's failure to comply with Little Caesar's prescribed methods, standards, procedures, and specifications for the operation of a LITTLE CAESARS restaurant. Specifically, Little Caesar had conducted an inspection of the restaurant and observed operational deficiencies that posed an unacceptable risk to customer health and safety and that otherwise deviated from Little Caesar's standards. The Drihmis were given twenty-four hours to cure critical operational defaults and thirty days to cure all other defaults. The notice also expressly stated that if the Drihmis failed to cure their defaults within the time provided, their Franchise Agreement for Restaurant 3102-001 would be terminated effective ninety days from their receipt of the Notice, or on February 13, 2018.

43.     On November 21, 2017, Little Caesar re-inspected Restaurant 3102-001 and observed that the Drihmis had failed to cure most of the critical operational defaults that were identified in the November 14 Notice of Default. Little Caesar also observed new critical operational defaults during the inspection.

44.     On November 21, Little Caesar also inspected Restaurant 3102-002. During that inspection, Little Caesar observed several operational deficiencies that posed an unacceptable risk to customer health and safety or that otherwise deviated from Little Caesar's standards.

45.     Thus, on December 15, 2017, Little Caesar sent the Drihmis a Notice of Default for Restaurant 3102-001 and for Restaurant 3102-02.  It was the fourth notice for Restaurant 3102-001 and third notice for Restaurant 3102-002 in the time period from May to December 2017. The notice again gave the Drihmis twenty-four hours to cure critical operational defaults and thirty days to cure all other defaults. And it informed the Drihmis that the failure to timely cure their defaults would result in the termination of their Franchise Agreements for Restaurants 3102-001 and 3102-002. The notice provided that any termination of the Franchise Agreement for Restaurant 3102-001 for failing to cure defaults that had not been previously identified in the November 14 notice would become effective sixty days from the Drihmis' receipt of the December 15 notice, or on February 14, 2018.

46.     On January 29 and 30, 2018, Little Caesar re-inspected Restaurants 3102-001 and 3102-002 and found that the Drihmis had failed to cure many of the operational defaults identified in the November 14 and December 15 Notices of Default. New operational defaults, including the use of unapproved products, were also observed.

47.     On February 22, 2018, Little Caesar sent the Drihmis their fifth and fourth Notice of Default for Restaurants 3102-001 and 3102-002, respectively, since May 2017.

48.    The Drihmis' acts breached material terms of the Franchise Agreements cited above and constituted grounds for termination.  Accordingly, the February 22 notice informed the Drihmis that their Franchise Agreements for Restaurants 3102-001 and 3102-002 were being terminated effective immediately based on their failure to cure their operational defaults after receiving notice of the defaults from Little Caesar and an opportunity to cure them.

49.    Also on February 22, 2018, Little Caesar sent the Drihmis a Supplemental Notice of Franchise Agreement termination informing them that their Franchise Agreements for Restaurants 3102-001 and 3102-002 were also being terminated based on their repeated defaults of the Franchise Agreements over the last twelve months, their repeated failure to comply with Little Caesar's operational standards, and the Franchise Agreements' cross-default provisions. The Supplemental Notice of Termination does not supersede or waive the effect of the preceding notice of termination.

**Defendants' Defaults Under Their Franchise Agreements
For Restaurants 3276-001 and 3276-002
And The Termination Of Those Franchise Agreements**

50.    On August 10, 2017, Little Caesar sent the Drihmis a Notice of Default and Notice to Cure informing them that they had committed defaults of their Franchise Agreements for Restaurants 3276-001 and 3276-002 by failing to

make timely payments to Blue Line for food and supply deliveries and by failing to provide to Little Caesar required financial statements related to the restaurants.

51.     On November 14, 2017, Little Caesar sent the Drihmis a second Notice of Default relating to Restaurant 3276-001 based on the restaurant's failure to comply with Little Caesar's prescribed methods, standards, procedures, and specifications for the operation of a LITTLE CAESARS restaurant. Specifically, Little Caesar had conducted an inspection of the restaurant and observed operational deficiencies that posed an unacceptable risk to customer health and safety or that otherwise deviated from Little Caesar's standards. In the notice, the Drihmis were given twenty-four hours to cure critical operational defaults and thirty days to cure all other defaults. The notice also expressly stated that if the Drihmis failed to cure their defaults within the time provided, their Franchise Agreement for Restaurant 3276-001 would be terminated effective ninety days from their receipt of the Notice, or on February 13, 2018.

52.     On November 21, 2017, Little Caesar re-inspected Restaurant 3276-001 and observed that the Drihmis had failed to cure most of the critical operational defaults that were identified in the November 14 Notice of Default. Little Caesar also observed new critical operational defaults during the inspection.

53.     On December 15, 2017, Little Caesar sent the Drihmis a third Notice of Default for Restaurant 3276-001, since May 2017. The notice again gave the

Drihmis twenty-four hours to cure their critical operational defaults. And it informed the Drihmis that the failure to timely cure their defaults would result in the termination of their Franchise Agreement for Restaurant 3276-001. The notice provided that any termination of the Franchise Agreement for failing to cure defaults that had not been previously identified in the November 14 notice would become effective sixty days from the Drihmis' receipt of the December 15 notice, or on February 14, 2018.

54.    On December 22, 2017, Little Caesar sent the Drihmis the fourth Notice of Default for Restaurant 3276-001 and the second for Restaurant 3276-002, since May 2017, based on their failure to, again, provide to Little Caesar required financial statements related to the restaurants.

55.    On January 29, 2018, Little Caesar conducted an operational inspection on Restaurants 3276-001 and 3276-002. The inspection revealed that the Drihmis had failed to cure many of the operational defaults related to Restaurant 3276-001 that were identified in the November 14 and December 15 Notices of Default. And it revealed new defaults, including the use of unapproved products.

56.    Thus on February 22, 2018, Little Caesar sent the Drihmis their fifth Notice of Default for Restaurant 3276-001, since May 2017. The Drihmis' acts breached material terms of the Franchise Agreement cited above and constituted grounds for termination. Accordingly, the February 22 notice informed the

Drihmis that their Franchise Agreement for Restaurant 3276-001 was being terminated effectively immediately based on the Drihmis' failure to cure their operational defaults after receiving notice of the defaults from Little Caesar and an opportunity to cure them.

57.    On January 30, 2018, Little Caesar inspected Restaurant 3276-002 and observed operational deficiencies that posed an unacceptable risk to customer health and safety or that otherwise deviated from Little Caesar's standards. The conditions at the location were deplorable. Among other things, the restaurant lacked a working toilet and the toilet was filled with excrement. In fact the Drihmis acknowledged the unsanitary conditions at, and the disrepair of, Restaurant 3276-002. In order to clean and repair the conditions, the Drihmis agreed that they had to close the restaurant until it was safe to operate.  Accordingly, on January 31, 2018, Little Caesar sent the Drihmis a Notice of Default and Notice to Cure for Restaurant 3276-002; the third one since May 2017.

58.    The Drihmis also committed defaults under their Franchise Agreements for Restaurants 3276-001 and 3276-002 by failing to make timely payments to Blue Line for food and supply deliveries on multiple occasions between December 2017 and January 2018.

59.    On February 22, Little Caesar sent the Drihmis their sixth and fourth notice for Restaurants 3276-001 and 3276-002, respectively, since May 2017, in a

notice titled Supplemental Notice of Default and Notice of Franchise Agreement Termination. The Drihmis' acts repeatedly breached material terms of the Franchise Agreements cited above and constituted grounds for termination. Accordingly, the February 22 Supplemental Notice informed the Drihmis that their Franchise Agreements for Restaurants 3276-001 and 3276-002 were being terminated based on their repeated defaults under the Franchise Agreements over the last twelve months, their repeated failure to comply with Little Caesar's operational standards, and the cross-default provisions contained in the Franchise Agreements. The Supplemental Notice is effective sixty days from the Drihmis' receipt of the Notice but, expressly, does not supersede or waive the effect of the preceding notice of termination related to Restaurant 3276-001.

60.    Little Caesar's February 22 notices terminating the Drihmis' Franchise Agreements requested that the Drihmis immediately comply with their post-termination obligations, as applicable, including the obligations to cease operating the LITTLE CAESARS franchises and cease using Little Caesar's trademarks, and the obligation to comply with the post-termination covenant against competition.

61.    The Drihmis continue to operate their LITTLE CAESARS franchises, in violation of their post-termination obligations.

62.   The Drihmis' actions have caused and continue to cause monetary damage and irreparable harm to Little Caesar, including harm to Little Caesar's reputation and goodwill.

## COUNT I
## Breach of Contract

63.   The allegations of paragraphs 1 through 62 are hereby incorporated by reference.

64.   The conduct described in this Complaint constitutes material breaches of the contractual provisions of the Franchise Agreements cited herein.

65.   These breaches constitute good cause for terminating the Franchise Agreements.

66.   As a direct and proximate result of these actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT II
## Trademark Infringement

67.   The allegations of paragraphs 1 through 66 are hereby incorporated by reference.

68.   The use in commerce of Little Caesar's trademarks and trade names by the Drihmis outside the scope of the Franchise Agreements and without Little Caesar's consent is likely to confuse or deceive the public into believing, contrary

to fact, that the unauthorized activities of the Drihmis are licensed, franchised, sponsored, authorized, or otherwise approved by Little Caesar. Such unauthorized use of Little Caesar's trademarks and trade names infringes its exclusive rights in its trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

69.    The acts of the Drihmis were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

70.    As a direct and proximate result of the Drihmis' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT III
## <u>Unfair Competition</u>

71.    The allegations of paragraphs 1 through 70 are hereby incorporated by reference.

72.    The use in commerce of Little Caesar's trademarks, trade names, and trade dress by the Drihmis outside the scope of the Franchise Agreements and without the consent of Little Caesar is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities. Such unauthorized use of Little Caesar's trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

73.     The acts of the Drihmis were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

74.     As a direct and proximate result of the Drihmis' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT IV
## Trade Dress Infringement

75.     The allegations of paragraphs 1 through 74 are hereby incorporated by reference.

76.     The Drihmis' restaurants are identified by signs, exterior appearance, packaging, containers, and other items on which the LITTLE CAESARS proprietary marks appear in the same distinctive style and color scheme as Little Caesar uses for the pizza restaurants operated by Little Caesar's licensees.

77.     The Drihmis' use of trade dress that is identical or confusingly similar to the LITTLE CAESARS trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of the Drihmis' restaurants, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their restaurants with the LITTLE CAESARS restaurants operated by Little Caesar's licensees. Such adoption of Little Caesar's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

78.    The Drihmis' acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

79.    As a result of the Drihmis' actions, Little Caesar has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.    Enter a declaratory judgment holding that Defendants' conduct violated the terms of the Franchise Agreements and constitutes good cause for terminating the Franchise Agreements;

B.    Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements as of the effective date of Little Caesar's Notice of Franchise Agreement Termination, or as otherwise provided by applicable law;

C.    Enter an order enjoining Defendants, and all those acting by, through, or in concert with them, by preliminary and permanent injunction, from using the Little Caesars trademarks, trade names, and trade dress, and from otherwise engaging in unfair competition with Little Caesar;

D.    Enter an injunctive order directing Defendants, and all those acting by, through, or in concert with them, to comply with all applicable post-termination obligations as provided in the Franchise Agreements, including but not

limited to promptly paying all sums owed to Little Caesar and its affiliates, complying with the post-termination noncompete, complying with any request from Little Caesar to purchase any equipment or other assets of the franchise, and taking all steps to transfer their leasehold interests in the franchise to Little Caesar or its designee in the event that Little Caesar elects to exercise any rights it or any of its affiliates or subsidiaries might have in such interests;

E.     Award Plaintiffs judgment against Defendants for the damages Plaintiffs have sustained and the profits Defendants have derived as a result of their trademark infringement, trade dress infringement, and unfair competition, assessing such damages in a separate accounting procedure, and then trebling those damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

F.     Enter judgment in favor of Plaintiffs for the damages they have suffered, including liquidated damages as provided for by the Franchise Agreement, as a result of Defendants' conduct, plus prejudgment interest allowed by law;

G.     Award Plaintiffs their costs and attorneys' fees incurred in connection with this action, pursuant to the Franchise Agreements and Section 35 of the Lanham Act, 15 U.S.C. § 1117, including the costs incurred in conducting any and all necessary inspections; and

H.     Award Plaintiffs such other relief in its favor as this Court may deem just and proper.

Respectfully submitted,

*/s/ Larry J. Saylor*
Larry J. Saylor (P28165)
Kimberly A. Berger (P56165)
MILLER, CANFIELD, PADDOCK
    & STONE P.L.C.
150 West Jefferson Avenue, Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 496-7986
Facsimile:    (313) 496-8454
saylor@millercanfield.com
berger@millercanfield.com

Robert L. Zisk (admitted in E.D. Mich.)
Stephen J. Vaughan (admitted in E.D. Mich.)
Justin L. Sallis (admitted in E.D. Mich.)
GRAY, PLANT, MOOTY, MOOTY
    & BENNETT, P.A.
The Watergate
600 New Hampshire Avenue, N.W. – Suite 700
Washington, D.C.  20037
Telephone:  (202) 295-2200
Facsimile:    (202) 295-2250
robert.zisk@gpmlaw.com
stephen.vaughan@gpmlaw.com
justin.sallis@gpmlaw.com

Dated: March 8, 2018          *Attorneys for Plaintiffs*

30964406.1\088888-00162

27