UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **LITTLE CAESAR ENTERPRISES, INC., et al.**,<br><br>Plaintiffs,<br><br>v.<br><br>**MIRAMAR QUICK SERVICE RESTAURANT CORPORATION et al.**,<br><br>Defendants. | 2:18-cv-10767<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, DENYING DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION** |

In this breach of contract and trademark infringement case, the pizza restaurant company Little Caesars Enterprises, Inc. and LC Trademarks, Inc., which owns the Little Caesars trademark, are suing operators of several franchise stores for repeatedly violating the franchise agreement that governs the parties' relationship and mutual obligations. The Plaintiffs have moved the Court to enter a preliminary injunction prohibiting the franchisees from operating in violation of the franchise agreements, while the franchisees on their part ask the Court to enjoin Little Caesars from canceling the franchises. The Plaintiffs' position is the stronger, so preliminary injunctive relief will be granted in their favor and denied to the franchisees.

## BACKGROUND

The "Little Caesars" trademark, service mark, trade name, and related marks are owned by Plaintiff LC Trademarks, Inc. ECF No. 32 PageID.321–22. LC Trademarks licenses these marks to Plaintiff Little Caesar Enterprises, Inc., which in turn licenses them to franchisees throughout the United States. ECF No. 32 PageID.322. Little Caesars franchisees are permitted to use the Little Caesars marks and to operate under the Little Caesars System, "which involves the production, merchandizing, and sale of pizza, chicken wings, and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information." ECF No. 32 PageID.321.

Khalid Drihmi and Abdel Drihmi are brothers who purchased four Little Caesars franchises in Connecticut and Massachusetts. They own the franchises through two companies, Miramar Quick Service Restaurant Corporation, and Silon Corporation. ECF No. 32 PageID.322–23. The relationship between Little Caesar Enterprises and Defendants was governed by detailed franchise agreements signed by the parties and personally guaranteed by the Drihmis. ECF No. 33-4 PageID.452–54. The agreements provided that "Franchisee shall operate the Restaurant in strict conformity with such methods, standards, procedures, and specifications as Little Caesar may from time to time

prescribe." ECF No. 33-4 PageID.441. The franchisees were further required to "maintain the Restaurant premises and adjacent public areas in a clean, orderly, and excellent condition and in excellent appearance to the public." ECF No. 33-4 PageID.412. Little Caesar Enterprises retained authority under the franchise agreements to conduct inspections of the franchise premises "when and as frequently as it deems appropriate, without notice to Franchisee." ECF No. 33-4 PageID.410, 412.

The agreements also mandated that Defendants purchase all products, ingredients, equipment, and supplies used or sold in their restaurants "solely from Little Caesar's affiliate Blue Line Foodservice Distribution ("Blue Line"), or from such other entity as Little Caesar designates in writing." ECF No. 33-4 PageID.412. The agreements specified that Defendants were to pay Blue Line directly for all supplies "in accordance with Blue Line's then-current payment terms and conditions." ECF No. 33-4 PageID.412. If a franchisee failed to make any payment required under the agreement in full, "Little Caesar and Blue Line reserve[d] the right, among other remedies, to (a) suspend or refuse shipment to Franchisee of additional Blue Line products until such payment has been made in full, and/or (b) require payment for any or all future shipments of Blue Line products to be made on a cash-on-delivery (COD) basis." ECF No. 33-4 PageID.412.

Defendants were further required to maintain accurate financial records and accounts, and to provide "weekly reports of Gross Sales," "financial statements on a quarterly basis," and "such other data and information regarding the operation of the Restaurant as Little Caesar may require." ECF No. 33-4 PageID.428. Little Caesar Enterprises retained the right "at any time to examine and copy, at Little Caesar's expense, the books, records, accounts, and business tax returns of the Franchisee, and the personal tax returns of Franchisee's owners." ECF No. 33-4 PageID.429.

Conditions warranting termination of the franchise agreements were set forth in plain language. They included the franchisee receiving three or more notices of default within a year, or demonstrating "willful or repeated failure . . . to meet any requirements or specifications established by Little Caesar with respect to product quality, physical property, condition of equipment or materials used, products manufactured, menu, or the use of products, packaging or promotional materials that have not been specified or approved by Little Caesar." ECF No. 33-4 PageID.435. Termination was also justified if a franchisee "refuses to permit Little Caesar to inspect Franchisee's Restaurant, books, records, and other documents" or "fails to cure any default under this Agreement which materially impairs the goodwill associated with the Propriety Marks or presents a health or safety hazard to Restaurant employees or customers." ECF No. 33-4 PageID.436.

Any violations such as these, under the franchise agreement, warranted termination "without affording Franchisee any opportunity to cure the default, effective immediately upon receipt of notice by Franchisee." ECF No. 33-4 PageID.434. Moreover, upon termination, the agreement required the franchisee to "immediately cease to operate the Restaurant" and no longer to "directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Little Caesar." ECF No. 33-4 PageID.437. The franchise agreement also contemplated liquidated damages for noncompliance, including $250 per day for each day the franchisee is in default, as well as estimated revenue and royalty fees Little Caesar Enterprises would forgo because of the franchisee's breach. ECF No. 33-4 PageID.438.

In August 2016, after five payments to Blue Line were returned for insufficient funds, Defendants' Wethersfield, Connecticut and Springfield, Massachusetts franchises were instructed to provide cash on delivery for product shipments going forward. ECF No. 46 PageID.956. Later, in January 2018, the Manchester, Connecticut and Hartford, Connecticut franchises were moved to prepayment terms "after 18 payments across the four stores were returned for insufficient funds over the prior year and a half." ECF No. 46 PageID.956. Prepayment required payment when the food and supplies are ordered from Blue Line, which was typically two days before delivery. *Id.*

On February 22, 2018, Little Caesar Enterprises sent Defendants two separate letters with the subject "Notice of Default and Notice of Franchise Agreement Termination." ECF Nos. 33-5, 33-6. Those letters described a long list of critical operational defaults and system standards defaults observed by Little Caesar Enterprises inspectors at the four restaurants owned by Defendants in November and December 2017. ECF Nos. 33-5, 33-6. Little Caesar Enterprises also sent Defendants separate "Supplemental Notice[s] of Franchise Agreement Termination," similarly dated February 22, 2018, which detailed additional defaults by Defendants. ECF Nos. 33-7, 33-8. Specifically, these supplemental notices described how Defendants had "fail[ed] to comply with federal tax laws, as evidenced by a 2016 Notice of Levy from the Internal Revenue Service related to your franchised restaurants," and "fail[ed] to provide to Little Caesar required financial statements related to your franchised restaurants and . . . to make timely payments to your supplier, Little Caesar affiliate Blue Line Foodservice Distribution, Inc., for food and supply deliveries." ECF No. 33-7 PageID.471; ECF No. 33-8 PageID.476. These various notices of default and termination referenced previous notices of default sent by Little Caesar Enterprises to Defendants in May, August, November, and December 2017. ECF No. 33-5 PageID.458; ECF No. 33-6 PageID.465; ECF No. 33-7 PageID.471; ECF No. 33-8 PageID.476. Accordingly, Defendants were on notice of the problems identified by Little Caesar Enterprises.

Defendants had also neglected to report gross sales at their Manchester franchise and to pay contractually required royalty and advertising fees on those sales since September 17, 2018. ECF No. 33-2 PageID.393. Likewise, since October 2018 they had not been reporting sales and paying the requisite fees for the Wethersfield franchise. *Id.* PageID.391. Defendants similarly did not report gross sales at their Springfield franchise or pay royalty and advertising fees on those sales during at least 38 weeks in 2018 and 2019. *Id.* They were likewise behind on reporting gross sales and paying the related fees in connection with their Hartford franchise. *Id.* at PageID.393–34. Little Caesars notified Defendants of these violations of the franchise agreements in a "Supplemental Notice of Default and Notice of Franchise Agreement Termination" dated January 9, 2019. ECF No. 33-9 PageID.479; *see* ECF No. 33-11 PageID.485–86 (List of Missing Franchise Payments). And Plaintiffs ground their request for a preliminary injunction in these most recent, and perhaps most serious violations of the franchise agreements, which remained uncured as of the date of the May 3, 2019 hearing on this matter. *See* ECF No. 45-1 PageID.943. Though Defendants submitted an opposition to Plaintiffs' motion for a preliminary injunction, that brief was late-filed and, most critically, does not dispute the bulk of Defendants' specific factual allegations regarding the franchise agreement violations outlined in Plaintiffs' briefing and accompanying exhibits. Rather, Defendants take the position that Plaintiffs

"themselves created the conditions that resulted in their alleged violations." ECF No. 49 PageID.963.

## DISCUSSION

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). In deciding whether to grant a preliminary injunction, the Court considers: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Graveline v. Johnson*, 747 F. App'x 408, 412 (6th Cir. 2018) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012)). These four considerations are "factors to be balanced, not prerequisites that must be met." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citations omitted).

### I. Plaintiffs' motion for preliminary injunction

Plaintiffs seek a preliminary injunction because they believe Defendants have continued to commit additional defaults under the franchise agreements since this lawsuit began. They have asked the Court to enter a preliminary injunction enjoining Defendants from: (1) continuing to operate their Little Caesars franchises; (2) infringing on LC Trademarks' Little Caesar marks and engaging in unfair competition;

and (3) violating the post-termination obligations contained in the franchise agreements, including the covenant against competition. Because the Court finds Plaintiffs have a substantial likelihood of success on the merits and would suffer irreparable injury absent the injunction, and that the public interest would be served by issuance of an injunction, the Court will grant Plaintiffs' motion for a preliminary injunction.

**A. Likelihood of success on the merits**

A party is not required to prove its entire case at a preliminary injunction hearing but must demonstrate a strong likelihood of success on the merits. *See Camenisch*, 451 U.S. 395. "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberative investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citation omitted). Plaintiffs have certainly met that threshold here. Their complaint asserts the following causes of action: (1) breach of contract; (2) trademark infringement; (3) unfair competition; and (4) trade dress infringement. The Court finds they are likely to succeed on the merits of each of these claims.

With respect to their claim for breach of contract, Plaintiffs have documented numerous instances of Defendants' defaults under the franchise agreements. Little Caesar was permitted to terminate the agreement if Defendants willfully or repeatedly failed to meet

operational and maintenance standards, refused to permit Little Caesar Enterprises to inspect the restaurant, or failed to make any required payment within 10 days of receiving notice that payment was overdue. ECF No. 33 PageID.435–36. On multiple occasions, Plaintiffs provided Defendants with written notice of default, explaining that inspectors had identified critical operational defaults (which the agreement required be cured within 24 hours to prevent termination), and other system standards defaults (to be cured within 30 days to avoid termination).[1] More specifically, an inspector found food items were "not properly dated for expiration," "[p]ersonal protection equipment was not available [for employees]," "[p]roper sauce making procedures [were] not followed," the sink was "not set up properly and sink broken," and "[w]ash/sanitize buckets were not present at the required stations." ECF No. 33-6 PageID.466; ECF No. 33-5 PageID.459. More significantly, Defendants admit they have failed on many occasions to report gross weekly sales and to pay royalty and advertising fees due on those sales. *See* ECF No. 41-4 (Drihmi Aff.) ("LCE has now created a situation where we have no choice but [to] default on our regular payments . . . ."). Defendants have not contested that these and other serious violations of the franchise

[1] The original notices of default are not themselves attached to Plaintiffs' motion. But they are referenced in multiple notices of default and franchise agreement termination included as exhibits to Plaintiffs' brief.

agreement occurred. Plaintiffs have therefore established a likelihood of success on the merits with respect to their breach of contract claims.

Plaintiffs are also likely to succeed on their trademark infringement and unfair competition claims. In the trademark context, establishing a strong likelihood of success on the merits is "often decisive" in determining that a preliminary injunction is warranted. *PGP, LLC v. TPII, LLC*, 734 F. App'x 330, 332 (6th Cir. 2018). This is because "[i]f the movant is likely to succeed on an infringement claim, irreparable injury is ordinarily presumed, and the public interest will usually favor injunctive relief." *Id.* (citing *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) and *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 532–33 (6th Cir. 2004)). To show that they are likely to succeed on the merits of their infringement and unfair competition claims, Plaintiffs need establish only that: (1) they own the Little Caesars marks; (2) Defendants are using the marks in commerce; and (3) Defendants' use of the marks is likely to cause confusion. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. § 1114(1)). *See Victory Lane Quick Oil Change, Inc. v. Darwich*, 799 F. Supp.2d 730, 735 (E.D. Mich. 2011) ("Under the Lanham Act . . . we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin"). Here, it is undisputed that Plaintiff LC Trademarks owns the Little Caesars trademark, service mark, trade name, and related marks, and that it has licensed those

marks to Plaintiff Little Caesar Enterprises, Inc. Defendants acknowledge they continue to operate their restaurants as Little Caesars franchises and are thus using Plaintiffs' marks in commerce. Concerning the final element of likelihood of confusion, the Sixth Circuit has held that "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark has been terminated is sufficient to establish 'likelihood of confusion.'" *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997). Because Defendants continue to hold their restaurants out as licensed Little Caesars franchises after termination of the franchise agreements, they are on a daily basis using Plaintiffs' marks without permission and thereby creating a likelihood of confusion. Plaintiffs have established a likelihood of success on the merits of their trademark and unfair competition claims, as well as their breach of contract claim.

**B. Irreparable injury to Plaintiffs absent the injunction**

After considering Plaintiffs' likelihood of success on the merits of their underlying claims, the Court must examine whether the Plaintiffs will suffer irreparable injury without the injunction. *Tenke Corp.*, 511 F.3d at 550. The Sixth Circuit has specifically held that "[i]n trademark infringement cases, a likelihood of confusion or possible risk to the requesting party's reputation satisfies the irreparable injury requirement." *Lucky's Detroit, LLC v. Double L, Inc.*, 533 F. App'x 553, 555 (6th Cir. 2013) (citing *Wynn Oil Co.*, 943 F.2d at 608). *See Ford Motor*

*Co. v. Lloyd Design Corp.*, 22 F. App'x 464, 469 (6th Cir. 2001) ("[W]here a plaintiff makes a strong showing of likelihood of confusion, irreparable harm follows as a matter of course."). The reasoning is that irreparable injury stems both from the potential difficulty plaintiff will have in proving damages, and also from "the impairment of intangible values." *Darwich*, 799 F. Supp. 2d at 736 (citing *Wynn Oil*, 943 F.2d at 608). The Sixth Circuit has also acknowledged that "[a] loss of customer goodwill often amounts to irreparable injury." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

It is inevitable that Defendants' operation of their restaurants using the Little Caesars name and marks will cause confusion. Despite termination of the franchise agreements, Defendants continue to use the logo, décor, branding, and many of the food products associated with Little Caesars restaurants. This will certainly lead consumers to believe Defendants' restaurants are authorized Little Caesars franchises, and could diminish customer goodwill towards the Little Caesars brand should customers be dissatisfied with their experience at Defendants' restaurants (which are not being operated in accordance with the Little Caesars System). For these reasons, Plaintiffs have easily established the threat of irreparable injury.

**C. Substantial harm to others**

The third factor for the Court to consider is whether issuing an injunction would cause substantial harm. *Tumblebus Inc. v. Cramer*, 399

F.3d 754, 769 (6th Cir. 2005). Unfortunately, there is a strong likelihood that a preliminary injunction will cause Defendants to suffer substantial financial harm. Defendants assert that they "decided to invest their life savings and that of their family in this business in the pursuit of the American dream." ECF No. 49 PageID.964. Though the Court does not take this consideration lightly, this harm arises from the Defendants' conduct in violating the terms of the franchise agreement more than it does from the issuance of the preliminary injunction. Moreover, even considering this harm, it is outweighed by the other three factors which weigh strongly in favor of the injunction.

**D. Public interest served by the injunction**

The final factor to evaluate in deciding a motion for preliminary injunction is "whether the public interest would be served by the issuance of the injunction." *Tumblebus*, 399 F.3d at 760. As an initial matter, there is a generally recognized public interest in holding parties to their agreements. *S. Glazer's Distrib. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 853–54 (6th Cir. 2017). As discussed in the context of Plaintiffs' likelihood of success on the merits, Plaintiffs have adduced significant evidence that Defendants have breached, and continue to breach, the franchise agreements. There is also a public interest in "preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383

(6th Cir. 2006) (citation omitted). Further, as specifically noted by another court in his district, "[t]he public interest is especially served by issuing a preliminary injunction against a former franchisee as a licensee's status increases the probability of consumer confusion." *Little Caesar Enterprises, Inc. v. R-J-L Foods, Inc.*, 796 F. Supp. 1026, 1036 (E.D. Mich. 1992) (Edmunds, J.) (quoting *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, (2d Cir. 1986)). Because Defendants continue to maintain their restaurants as unauthorized Little Caesars franchises, there is a substantial likelihood that consumers who patronize these restaurants will be confused. The Court therefore finds that the public interest would be served by a preliminary injunction.

Examined together, these factors weigh strongly in favor of granting Plaintiffs' motion for a preliminary injunction. The Court is particularly convinced by the proof in support of Plaintiffs' showing of a substantial likelihood of success on the merits, and the fact that Plaintiffs will inevitably suffer irreparable injury absent issuance of an injunction. Though an injunction will cause harm to Defendants, the Court finds that these previous factors, as well as the public interest, tip the scale in favor of granting Plaintiffs' request for an injunction.

## II. Defendants' Motion for Preliminary Injunction

Defendants ask the Court to enjoin Little Caesar Enterprises and LC Trademarks from enforcing termination of the franchise agreement based on unproven violations of the agreement and attempting to enforce any penalty provisions in the agreements. Defendants further request that the Court enjoin Blue Line from "over-charging or otherwise manipulating the defendants' account to create artificially late charges, and costs," which Defendants purport gave them no choice but to violate the franchise agreements. Defendants have not provided facts or law that would justify entering an injunction prohibiting this behavior.

### A. Likelihood of success on the merits

Defendants have conceded that they are in breach of the franchise agreements but implicitly rely on the argument that they were forced into breach by the actions of Little Caesar Enterprises, which they urge "created its own violations of the agreement through illegal conduct, [and] unfair and deceptive business practices." ECF No. 41-2 PageID.779. Defendants' brief only expressly addresses their likelihood of success on the merits of their retaliation and discrimination claims, though it notes in passing that Defendants' own violations of the franchise agreements should not be considered substantial enough to warrant termination of the franchise agreements. *Id.* at PageID.780. The Court does not find that Defendants have shown a likelihood of success on the merits of any of their claims.

Concerning their retaliation claim, Defendants argue that Little Caesar Enterprises began issuing them notices of violation more frequently "after the defendants exercised their legal rights not to consummate a deal LCE supported, and [after] they coincidentally stop[ped] paying gratuities to LCE agents." ECF No. 41-1 PageID.783. But Defendants do not dispute that they were at this point already in violation of the franchise agreements because of their failure to maintain required operational standards, to report gross weekly sales, and to pay related royalties and fees. Because Defendants do not dispute the various violations of the franchise agreements carefully documented by Plaintiffs, the Court cannot conclude that the only possible reason Plaintiffs began issuing violation notices was as retaliation for Defendants' lack of cooperation and failure to pay bribes. Applying this same reasoning, the Court finds Defendants have not established a likelihood of success on the merits of their claim that discrimination was the real reason Little Caesar Enterprises notified them of multiple instances of breach.

**B. Irreparable Harm**

Addressing the second preliminary injunction factor, the Court determines that Defendants' harm is not irreparable because it is fully compensable by money damages. *See Basicomputer Corp.*, 973 F.2d at 511. The Supreme Court has plainly stated that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily extended in

the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). The possibility that Defendants could be adequately compensated at a later date "weighs heavily against a claim of irreparable harm." *Id.* Though they assert their discrimination claims could not adequately be compensated with money damages, Defendants have offered no legal support for that position. Moreover, the Sixth Circuit has previously found that certain discrimination claims can be adequately remedied with monetary damages. *See, e.g., Zazueta v. Ky. Comm. and Tech. Coll. Sys.*, 92 F. App'x 298 (6th Cir. 2004) (finding that employment-discrimination plaintiff's claims could be compensated with monetary damages). For example, in *Jerome v. Viviano Food Co., Inc.*, 489 F.2d 965 (6th Cir. 1974), the Sixth Circuit concluded that a Title VII plaintiff who claimed that the defendant-employer refused to hire her because she was a woman was not entitled to a preliminary injunction because back wages could adequately compensate her alleged damages. Moreover, in the context of their own argument about irreparable harm, Defendants declared, "If the court does not intervene and issue an order enjoining the plaintiff from engaging in further actions against the defendants, they will be driven out of business with no hope to ever recover." ECF No. 41-1 PageID.784. This focus on the longevity of Defendants' restaurants suggests even Defendants' claim that they were pushed out of business or held to more stringent standards than other franchisees because of their race or national origin would be compensable

by monetary damages, potentially measured by the restaurants' average gross profits.

### C. Substantial harm to others

For reasons discussed above, the Court finds that Plaintiffs would suffer substantial reputational harm should Defendants continue to operate their unauthorized Little Caesars franchises. *See infra* at 10–13.

### D. The public interest

The Court disagrees that entering Defendants' requested injunction would advance the public interest. As stated previously, there is an acknowledged public interest in holding parties to their agreements. *Great Lakes Brewing Co.*, 860 F.3d at 853–54. Additionally, the public interest is best served by guarding against the operation of unlicensed franchisees. *R-J-L Foods, Inc.*, 796 F. Supp. At 1036.

## CONCLUSION

For these reasons, Plaintiffs' motion for preliminary injunction is hereby **GRANTED** and Defendants' motion for preliminary injunction is **DENIED**. Within ten (10) days of the date of this Order, Plaintiffs shall file on the docket a proposed Preliminary Injunction Order with appropriate terms enjoining Defendants from (1) continuing to operate their restaurants as Little Caesars franchises; (2) infringing on the Little Caesar marks owned by LC Trademarks; and (3) violating the post-termination obligations contained in the franchise agreements, including the covenant against competition. Plaintiffs are directed to also submit

the proposed order in Word format via the Proposed Orders function in CM/ECF. Following the Court's independent review and subject to its approval, the Preliminary Injunction Order will be entered and shall thereupon shall take immediate effect.

**SO ORDERED.**

Dated: July 16, 2019

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE