UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **LITTLE CAESAR ENTERPRISES, INC., ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**MIRAMAR QUICK SERVICE RESTAURANT CORP., ET AL.,**<br><br>Defendants. | 2:18-CV-10767-TGB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS AND DISMISSING CASE (ECF NO. 21)**<br><br>HON. TERRENCE G. BERG |

This case arises from the alleged failure of two Massachusetts and Connecticut-based Little Caesars franchisees to abide by the terms of their franchise agreements with Little Caesars.

## I. BACKGROUND

Two brothers, Khalid Drihmi and Abdel Drihmi, purchased and operated four Little Caesars franchises in Connecticut and Massachusetts. Am. Comp., ECF No. 32, PageID.322-23. Those franchises were owned and operated through two companies: Miramar Quick Service Restaurant Corporation and Silon Corporation. *Id.* The relationship between the Drihmi brothers, their companies, and Little

1

Caesar[1] was governed by a franchise agreements signed and personally guaranteed by the Drihmi brothers. *Id.* at PageID.323, 325

The Franchise Agreements imposed certain duties on Miramar and Silon, and corresponding duties on Little Caesar. *Id.* at PageID.325-29. At some point, the relationship between the Drihmis and Little Caesar broke down over the Defendants' alleged nonpayment for supplies and ingredients and failure to report earnings and financial statements to Little Caesar.[2]

Little Caesar sued Defendants in early 2018, more than five years ago. Compl., ECF No. 1. Defendants answered with a counterclaim, accusing Little Caesar of several torts, breach of contract, and of violating federal and state anti-discrimination and antitrust laws. *See* Answer, ECF No. 13; Answer to Am. Compl., ECF No. 40. Both sides moved for preliminary injunctions. *See* ECF Nos. 33, 41. Little Caesar asked the Court to enjoin Defendants from operating their franchises in violation of the Franchise Agreements, while Defendants sought to enjoin Little Caesar from terminating the Franchise Agreements.

---

[1] Plaintiff LC Trademarks, Inc. owns the "Little Caesars" trademark and related intellectual property and licenses those marks to Little Caesar Enterprises, Inc. Am. Compl., ECF No. 32, PageID.324. The Court will refer to all Plaintiffs collectively as "Little Caesar."

[2] The factual background is recounted in detail in the Court's prior Order resolving the parties' cross motions for preliminary injunctions. *See generally*, ECF No. 51.

2

In July, 2019, the Court sided with Little Caesar, and Defendants appealed. Over the next six months, Defendants repeatedly struggled to comply with the Court's order that the franchise locations cease operating and be de-identified as Little Caesars restaurants. *See generally*, Prelim. Injunction, ECF No. 52. Defendants first insisted that they had complied with the Court's order. *See* Status Report of Compliance, ECF No. 64. But the restaurants had not been fully de-identified. *See* Pl's. Repl., ECF No. 67, PageID.1206-7 (photographs showing that franchise locations still displayed Little Caesars branding and materials). Next, Defendants maintained that compliance was impossible, because their landlords had locked them out of their former franchises for nonpayment of rent. Updated Status Report of Compliance, ECF No. 69, PageID.1218.

In mid-2020, the Sixth Circuit affirmed this Court's injunction. Sixth Cir. Order, ECF No. 77; Mandate, ECF No. 78. By then, Defendants had closed their franchises in compliance with the Court's order.

Before the Sixth Circuit issued its decision, Defendants' counsel had moved to withdraw, arguing that Defendants had refused to pay the full required retainer and had failed to pay other bills that had come due. Mot. for Withdrawal, ECF No. 68. The Court granted counsel's motion in May, 2020. ECF No. 75. In that Order, the Court directed the corporate Defendants (Miramar Quick Service Restaurant Corporation and Silon Corporation) to obtain new counsel within fourteen days, explaining that

a corporation must appear through counsel, and may not proceed pro se. *Id.* at PageID.1250-52. The Court also instructed the individual defendants to notify the Court within fourteen days of their intent to either proceed pro se or retain new counsel. *Id.*

But none of the Defendants responded to the Court's order, and no further action was taken in the case. A few months after the Sixth Circuit issued its decision, the Court ordered Plaintiffs to show cause why their claims should not be dismissed for failure to prosecute. Show Cause Order, ECF No. 79. In response, Plaintiffs explained that they had discovered that all Defendants had declared bankruptcy without informing the court or the Plaintiffs. Show Cause Resp., ECF No. 80. At the time Plaintiffs filed their response, the corporate entities' bankruptcy proceedings had ended, while the individual defendants' bankruptcies were ongoing. Bankruptcy Dockets, ECF Nos. 80-2; 80-3; 80-4; 80-5.

In late January, 2023, the Court ordered all parties to appear for a status conference. At the conference, Plaintiffs informed the Court of their desire to resolve the case in its entirety, and indicated that they would voluntarily dismiss their own claims against the Defendants should Defendants' counterclaims be dismissed. None of the Defendants appeared.

Plaintiffs moved to dismiss all of Defendants' pending counterclaims for failure to prosecute. *See* ECF No. 82. In response, one individual defendant, Khalid Drihmi, filed a document captioned

4

"STATEMENT in Support of Motion for Preliminary Injunction." *See* ECF Nos. 84, 85, 86.[3] As the caption suggests, that document is not a response to Plaintiffs' motion, but instead appears to be a duplicate of an affidavit appended to Defendants' original motion for a preliminary injunction. *Compare* ECF No. 84 *with* ECF No. 41-4.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 41(b), the Court is authorized to dismiss a case for want of prosecution if "the plaintiff fails to prosecute or comply with [the Federal Rules of Civil Procedure] or a court order." Fed. R. Civ. P. 41(b). E.D. Mich. L.R. 41.2 likewise permits the Court, on its own motion and after reasonable notice or an application of a party, to enter an order dismissing a case unless good cause is shown. Whether to grant a motion to dismiss pursuant to Rule 41(b) is left to the discretion of the trial court. *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999).

The factors to be considered before dismissing a case for failure to prosecute are "whether: 1) the failure to cooperate with the court's orders was willful or in bad faith; 2) the opposing party suffered any prejudice; 3) the party was warned that dismissal was contemplated; and 4) less severe sanctions were imposed or considered." *Palasty v. Hawk*, 15 F. App'x 197, 199 (6th Cir. 2001) (citation omitted).

---

[3] Khalid Drihmi filed the same document three times.

The Court must take into consideration "the difficulty an individual faces in bringing forward their case without the benefit of legal representation." *Berry v. Cent. Michigan Univ.*, 2019 WL 7293374, at *2 (E.D. Mich. Dec. 30, 2019) (citation omitted). But "because defendants are entitled to a fair and timely resolution of the litigation . . . pro se litigants are not to be accorded any special consideration when they fail to adhere to readily-comprehended court deadlines." *Id.* (citation and internal marks omitted).

### III. ANALYSIS
#### a. Whether Defendants are at fault or acted willfully or in bad faith

In this context, a finding of "fault" requires evidence either of "an intent to thwart judicial proceedings or a reckless disregard for the effect of [a plaintiff's] conduct on those proceedings." S*chafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008). There is no evidence that Defendants acted in bad faith or intentionally tried to obstruct proceedings. But Defendants have exhibited "extremely dilatory" conduct, *Id.* at 739, and have refused to follow the Court's clear and unequivocal order to obtain counsel or otherwise prosecute this action.

Further, Defendants never notified this Court that they had declared bankruptcy, nor did they alert the Court when those bankruptcies closed. Finally, Defendants have without good cause failed

6

to provide responses to discovery requests, and have made no discovery requests of their own. *See* ECF No. 70, PageID.1230-31.

In short, Defendants have done absolutely nothing to prosecute their counterclaims, save for the initial filing and unsuccessful appeal of a motion for a preliminary injunction. In the nearly four years since the Court's initial decision issued and the three years since Sixth Circuit affirmed that order, Defendants have taken no action at all in prosecution of their claims. This amounts to the sort of willful, reckless disregard for these proceedings that justifies dismissal for failure to prosecute.

### *b. Prejudice to Little Caesar*

The key to finding prejudice is whether the cross-defendants "waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Schafer*, 529 F.3d at 739 (citation omitted, alterations in original). Little Caesar has suffered at least some prejudice. Defendants' failure to prosecute the action resulted in the expenditure of time and attorney's fees a on response to the Court's earlier show-cause order, appearance at a status conference, and Little Caesar's filing of the pending motion to dismiss. And Little Caesar had to attempt to coordinate discovery with the Defendants in the face of noncompliance with the Court's scheduling orders. ECF No. 70, PageID.1230-31.

7

### c. *Warning to Defendants*

This factor weighs against Defendants, as they were explicitly cautioned that failure to follow the Court's order to either obtain counsel or notify the Court of their intention to proceed pro se could lead to dismissal. *See* ECF No. 75, PageID.1251-52.

The corporate entities were specifically cautioned that they "must retain new counsel if they intend to defend the action," and that a failure to retain counsel "may result in default judgment." *Id.* at PageID.1250. The Court also warned the individual defendants would technically be permitted to proceed pro se, if they chose to do so they would be "personally responsible for complying with all orders and deadlines set by the Court . . . including filing any motions, responses, briefs, or other legal papers" that might be required. *Id.* at PageID.1251.

Like the corporate defendants, Khalid and Abdel were warned that failure to "appropriately defend the case" could result in default judgment. *Id.* The Court ordered Khalid and Abdel to retain counsel within 14 days or notify the Court of their intention to proceed pro se, and warned that "failure to retain counsel or to otherwise defend the case and prosecute Defendants' counterclaims [could] result in default judgment." *Id.* at PageID.1252.

The corporate defendants never retained counsel. And the individual defendants neither retained counsel nor advised the Court that they intended to proceed pro se. In keeping with that pattern,

8

Defendants have not meaningfully responded to the pending motion to dismiss their counterclaims for failure to prosecute. Instead, Khalid Drihmi has filed (three times) an unrelated affidavit that has no bearing on the issues raised in Plaintiffs' motion. No other attempt at a response has been made.

Defendants have had ample warning that the sort of conduct exhibited here could lead to dismissal of their claims, and indeed are on notice of the currently pending motion requesting just that relief.

### d. *Consideration of lesser sanctions*

Before dismissing a case with prejudice for failure to prosecute, a court must consider whether a lesser sanction would better serve the interests of justice. *Carpenter v. City of Flint*, 723 F.3d 700, 709 (6th Cir. 2013). A court should consider the "wide range of lesser sanctions" available, including "levying a fine, barring [counsel] from participating in oral argument, or any other disciplinary action." *Id.* (citations omitted).

Here, none of those sanctions would appropriately protect the integrity of the judicial process. Defendants are not represented, so professional discipline is not available as a sanction. And there is no indication that a fine—imposed against two recently-bankrupt individuals and two defunct corporations—would make any discernible difference. Defendants have taken no action to prosecute their counterclaims, for more nearly four years, but have allowed this case to

9

remain dormant on the Court's docket. Dismissal with prejudice is an appropriate sanction to bring this case to a final resolution without any further delay.

## IV. CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for to Dismiss for Failure to Prosecute (ECF No. 82) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' counterclaims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that, based on the representations of Plaintiffs' counsel at the status conference held on February 6, 2023, that Plaintiffs wished to dismiss their claims and bring this case to an end, Plaintiffs' claims against all Defendants are **DISMISSED WITH PREJUDICE**.

Because all remaining claims by and against all parties are dismissed, the Clerk of the Court is respectfully directed to close this case.

**IT IS SO ORDERED,** this 15th day of May, 2023.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge